## MOULTON BROTHERS, INC. *v.*
## JOHN J. LEMIEUX ET AL.
## (AC 22638)

Mihalakos, Flynn and Bishop, Js.

Argued October 30—officially released December 31, 2002

*John H. Parks*, for the appellants (defendants).

*Bruce D. Tyler*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendants, John J. Lemieux and Alyson M. Lemieux, appeal from the judgment of the trial court, rendered in favor of the plaintiff, Moulton Brothers, Inc., on the defendants' counterclaim, in this action to foreclose a mechanic's lien.[1] On appeal, the defendants claim, among other things, that the court improperly (1) determined that the third count of their counterclaim failed to allege a claim for breach of contract and (2) failed to award damages resulting from the breach of contract.[2] We affirm in part and reverse in part the judgment of the trial court. Specifically, we reverse the judgment as to the third count of the defendants' counterclaim and affirm the judgment in all other respects.

The following facts and procedural history are relevant to our resolution of the defendants' appeal. The plaintiff brought this action to foreclose a mechanic's lien filed against real property owned by the defendants. The defendants filed a four count counterclaim, seeking a discharge of the lien and damages for "negligence and misrepresentation,"[3] and alleging violations of the Home Solicitation Sales Act, General Statutes § 42-134a et seq. (HSSA), and the Connecticut Unfair Trade Prac-

---

[1] The plaintiff filed a cross appeal, but withdrew it on July 8, 2002.

[2] Additionally, the defendants claim that the court improperly (3) failed to address their counterclaim for negligence, (4) failed to award damages resulting from negligence, (5) denied two motions to dismiss they raised during trial, (6) issued a memorandum of decision on December 12, 2001, without having conducted a hearing or having ruled on a motion to dismiss they filed on December 1, 2001, (7) failed to dismiss the plaintiff's complaint, (8) prohibited the defendant Alyson M. Lemieux from retaking the witness stand, immediately after the plaintiff argued its motion to dismiss, to testify regarding misrepresentations purportedly made by the plaintiff and (9) failed to mark an affidavit they offered as an exhibit at trial.

[3] The third count of the defendants' counterclaim is labeled "negligence and misrepresentation."

tices Act (CUTPA), General Statutes § 42-110a et seq. During trial, the HSSA claim was dismissed. After trial, the court found in favor of the defendants on the plaintiff's foreclosure claim and, pursuant to the first count of the counterclaim, discharged the mechanic's lien.[4]

[4] In its memorandum of decision, the court made the following factual findings: "In June, 1997, the defendants wished to have a new residence built . . . . They approached Leslie Moulton, who was and is the owner, president and manager of the plaintiff, a corporation. . . . Moulton expressed interest in constructing the home for the defendants. . . .

"Using the floor plan supplied by the defendants, Moulton, on June 18, 1997, completed a five page draft of preliminary plans for the defendants. The parties exchanged proposals and counterproposals. . . .

"On or about April 28, 1998, the parties finally agreed that the plaintiff would erect the home in accordance with the specifications and blueprints prepared by Moulton for a sales price of $162,752. The written contract called for installment payments that became due as construction progressed. Because the defendants procured financing through a lender, however, payments were made only as funds became available at the lender's pace rather than in response to billing by the plaintiff. . . .

"During construction, disputes arose concerning the quality of the work and whether that work met the contract specifications. Eventually, the defendants withheld substantial payments until these differences could be resolved. Despite these disputes, and the incomplete state of construction, the defendants moved into the house on September 21, 1998. The plaintiff continued to work on the house in September and October, 1998, after the defendants began residing there.

"On October 24, 1998, lengthy discussion and negotiation produced a second accord among the parties. They orally agreed to certain credits, deductions and additional charges, and that the defendants would pay, on that date, $54,075 in satisfaction of the work done by the plaintiff up to that point. That sum was fully paid on that date. It was further agreed that when the plaintiff satisfactorily addressed all the deficiencies on a written 'punch list,' comprising twenty-eight items, the defendants would pay another $14,700 to the plaintiff.

"In the days following this agreement, Moulton rectified around ten of the twenty-eight deficiencies. Moulton requested that John Lemieux sign off on the punch list as each item was addressed, but Lemieux was unwilling to engage in piecemeal confirmation of the work. An argument ensued, and, on October 28, 1998, Moulton stormed off the premises. The plaintiff did no further work on the site. The defendants have never paid any of the additional $14,700.

"On November 30, 1998, the plaintiff filed a mechanic's lien certificate on the Stafford land records, which certificate was served on the defendants on December 1, 1998."

The court found in favor of the plaintiff on the remaining counts of the defendants' counterclaim, the "negligence and misrepresentation" and CUTPA counts. This appeal followed.[5] Additional facts and procedural history will be provided as necessary.

The defendants' first claim on appeal is that the court improperly determined that the counterclaim failed to allege a count or claim for breach of contract. The defendants argue that the third count of their counterclaim properly sets forth alternate theories of recovery arising from the same predicate facts and that it includes a claim for breach of contract. We agree.[6]

In that portion of the court's memorandum of decision discussing the third count of the defendants' counterclaim, the court determined that "the counterclaim contains no count of breach of contract." The court viewed the third count of the defendants' counterclaim as alleging "intentional or negligent misrepresentation" and, after analyzing the evidence adduced at trial, concluded that the defendants failed to prove their misrepresentation claim. The court, therefore, did not address

[5] On July 8, 2002, the defendants filed a motion seeking to file a substitute appellate brief, to which the plaintiff objected. The defendants apparently filed the motion as a result of the plaintiff's argument in its brief that the defendants inadequately briefed the nine issues contained in their statement of issues. The plaintiff objected to the motion, arguing that the rules of practice do not provide for substitute briefs. The plaintiff also claimed that because the defendants did not attach a copy of the proposed substitute brief to their motion, it could not be determined whether the substitute brief would be adequately briefed in compliance with Practice Book § 67-4 and other rules of appellate procedure. Additionally, the plaintiff claimed that the defendants did not show good cause for their request. On September 19, 2002, we denied the defendants' motion.

[6] The plaintiff argues that we should not consider *any* of the defendants' claims or issues on appeal because they have not been adequately briefed pursuant to Practice Book § 67-4. We consider the plaintiff's argument to be pertinent to the defendants' third, fourth, fifth, sixth, seventh, eighth and ninth claims and, accordingly, we will address it in our resolution of those claims.

the evidence adduced at trial to determine if it supported a claim for breach of contract.

"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them." (Internal quotation marks omitted.) *Moore* v. *Sergi*, 38 Conn. App. 829, 841, 664 A.2d 795 (1995). The purpose of a complaint or counterclaim is to limit the issues at trial, and such pleadings are calculated to prevent surprise. *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995). "It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Sergi*, supra, 841–42.

Thus, it is clear that "[t]he court is not permitted to decide issues outside of those raised in the pleadings." *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 200, 756 A.2d 309 (2000). It is equally clear, however, that the court must decide those issues raised in the pleadings.

Although no count of the defendants' counterclaim is labeled "breach of contract," the allegations contained in their third count do sound in contract. Specifically, in the third count, labeled "negligence and misrepresentation," the defendants alleged, among other things, that they relied on the plaintiff's representations as an experienced builder of quality homes, sought the plaintiff's services and signed a proposal for the construction of a home by the plaintiff.[7] They further

---

[7] "We have uniformly approved the use of a single count to set forth the basis of a plaintiff's claims for relief where they grow out of a single occurrence or transaction or closely related occurrences or transactions, and it does not matter that the claims for relief do not have the same legal basis.

alleged that once construction commenced, they complained to the plaintiff about numerous defects in the plaintiff's work,[8] and, despite the plaintiff's assurances that the defects would be remedied, the plaintiff failed to cure the defects. Finally, the defendants alleged that they "claim damages as a result of one or more of the following . . . breach of the plaintiff's obligations in the proposal . . . incomplete work, unworkmanlike construction, construction with unsuitable materials [and] construction or design which are not in accordance with sound engineering standards . . . ."

We conclude that those allegations sound in contract. The court's determination that "the counterclaim contains no count of breach of contract," therefore, was improper. The court was required to evaluate the claim in light of the evidence.

The defendants' second claim on appeal is that the court failed to award damages resulting from the plaintiff's breach of contract. The defendants assert that the court did not evaluate the evidence proffered at trial to determine if it supported an award of damages for breach of contract.[9] As previously discussed, the court improperly determined that the issue of breach of contract was not raised by the pleadings and, therefore, it never reached the issue of whether to award any contract damages. We consider that claim to be subsumed within the defendants' first claim.

It is only when causes of action, that is, the groups of facts upon which the plaintiff bases his claims for relief, are separate and distinct that separate counts are necessary or indeed ordinarily desirable." (Internal quotation marks omitted.) *Burns* v. *Koellmer*, 11 Conn. App. 375, 387, 527 A.2d 1210 (1987).

[8] In thirty-seven subparagraphs, the defendants specify the nature and types of defects in the plaintiff's construction, materials, design and workmanship.

[9] At trial, the defendants proffered testimonial and other evidence relating to the issue of damages, including testimony by expert witnesses and reports of their findings.

As to the defendants' remaining claims,[10] we note that "[f]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Wittman* v. *Krafick*, 67 Conn. App. 415, 416, 787 A.2d 559 (2001), cert. denied, 260 Conn. 916, 797 A.2d 516 (2002). Moreover, "[w]here a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." *State* v. *Sewell*, 38 Conn. App. 20, 29, 658 A.2d 598, cert. denied, 234 Conn. 918, 661 A.2d 98 (1995).

Practice Book § 67-4 sets forth the required content and organization of the appellants' brief.[11] The defen-

---

[10] See footnote 2.

[11] The appellants must provide "[a] concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, with appropriate references to the page or pages of the brief where the issue is discussed . . . ." Practice Book § 67-4 (a). The appellant also must divide the argument "under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document. . . ." Practice Book § 67-4 (d). Further, "[t]he argument on each point shall include a separate, brief statement of the standard of review the appellant believes should be applied." Practice Book § 67-4 (d). The appellants also must include "[a] table of authorities . . . with references to the page or pages of the brief where the citations to those authorities appear. . . ." Practice Book § 67-4 (b). Additionally, "[w]hen error is claimed in any evidentiary ruling . . . the brief or appendix shall include a verbatim statement of the following: the question or offer

dants' have failed to follow the dictates of our rules of practice. Their brief does not contain any references to the pages where the issues are discussed. It is not divided into as many parts as there are issues to be presented. It does not include a statement of the standard or standards of review that the defendants believe should be applied to their issues. It contains no appendix, although there are references to an appendix in the brief, and the table of authorities does not contain any references to the pages of the brief where the citations appear. Furthermore, the defendants have not clearly and fully set forth their arguments in their brief. Consequently, after examining the record, briefs and the arguments of the parties, we cannot judiciously and efficiently consider the defendants' remaining claims on appeal. Because the defendants have failed to brief those remaining claims adequately, we decline to review them.

The judgment is reversed only as to the third count of the defendants' counterclaim and the case is remanded for a hearing on the merits of the defendants' claim for breach of contract. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." Practice Book § 67-4 (d) (3).