MARY FITZPATRICK ET AL. *v.*
DAVID A. SCALZI ET AL.
(AC 21433)

Schaller, Mihalakos and Bishop, Js.

Argued May 1—officially released October 8, 2002

*Roy W. Moss*, for the appellants (defendants).

*Lindy R. Urso*, with whom was *John P. Regan*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. This an appeal by the defendants, David A. Scalzi, Anthony G. Scalzi and Celeste Scalzi, from the judgment of the trial court rendered upon the acceptance of a report by an attorney trial referee (referee) recommending judgment in favor of the plaintiffs, Mary Fitzpatrick and Charles Morgan, the sublessors in this residential housing action for the return of a security deposit. We affirm the judgment of the trial court.

The referee found the following facts. The defendants owned certain real estate (premises) at 921 Stillwater Road, Stamford, and had leased the premises to Nancy Rivero and Carlos Rivero for a term to run from June 1, 1997, until May 31, 1998. By the terms of the lease, the premises could be sublet with the written approval of the defendants.

The Riveros sublet the premises to the plaintiffs for a term to run from September 15, 1997, until May 31, 1998, with the consent and active participation of the defendants. Because the defendants were unwilling to accept the plaintiffs' credit, they retained the Riveros' security deposit, in the sum of $3700, and the Riveros, in turn, were paid that sum by the plaintiffs to replace their deposit made to the defendants.

The plaintiffs occupied the premises for the entire term of their sublease and subsequently informed the defendants of their forwarding address and made due demand for the return of their security deposit. The defendants failed to return the deposit or to forward an itemized list of damage to the premises that was to be withheld from the deposit.

The plaintiffs thereafter filed an action claiming unlawful retention of their security deposit under General Statutes § 47a-21 (d) (2), violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and unjust enrichment. After a trial, the referee found violations of § 47a-21 (d) (2) and CUTPA, and that the defendants had been unjustly enriched. The referee determined damages to be $3700 for the failure to return the plaintiffs' deposit, an additional $3700 because that failure was wilful and wrongful, $1411 in interest under General Statutes § 37-3a and $1321 for attorney's fees under CUTPA for a total of $10,132. The court accepted the referee's findings and recommendation that judgment be rendered in favor of the plaintiffs. After the court rendered judgment in favor of the plaintiffs, this appeal followed.

The defendants claim that the court improperly accepted the report of the referee because (1) the referee improperly concluded that the defendants were landlords as to the plaintiffs and that the defendants were liable to the plaintiffs under § 47a-21 (d) (2), (2) the referee improperly concluded that the defendants were liable to the plaintiffs under CUTPA, (3) the referee improperly concluded that the defendants had been unjustly enriched and (4) the amount of the damages award was improper in light of the evidence.

We first set forth the standard of review for matters involving referees. "It is axiomatic that [a] reviewing authority may not substitute its findings for those of

the trier of the facts. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted). *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999). Thus, the findings of the referee will be disturbed only if they are clearly erroneous.

I

## THE DEFENDANTS' LIABILITY
## UNDER § 47a-21 (d) (2)

The referee found that under § 47a-21 (d) (2), the defendants were liable to the plaintiffs for failure to return their security deposit. The relevant language of § 47a-21 (d) (2) provides: "Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address. Within thirty days after termination of a tenancy, each landlord . . . shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the amount

or value of any security deposit paid by such tenant . . . ."

The defendants contend that they were not landlords as to the plaintiffs for the purposes of § 47a-21 (d) (2) and that the referee's finding that they were was improper. We disagree.

The Landlord and Tenant Act, General Statutes § 47a-1 et seq., defines the term "landlord" in both § 47a-1 (d) and § 47a-21 (a) (6). Section 47a-1 provides in relevant part: "As used in this chapter and *sections 47a-21* . . . (d) 'Landlord' means the owner, lessor or sublessor of the dwelling unit, the building of which it is a part or the premises." (Emphasis added.) General Statutes § 47a-21 (a) (6) further defines landlord as "any landlord of residential real property, and includes (A) any receiver; (B) any person who is a successor to a landlord or to a landlord's interest; and (C) any tenant who sublets his premises."

The term "tenant" is defined in § 47a-1 (*l*) as "the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law." The term is also defined in § 47a-21 (a) (12) as "a tenant, as defined in section 47a-1 . . . ."

As is apparent from the pleadings and the referee's findings, the defendants meet the definition of landlord as defined in those two statutes. They are the owners of the dwelling unit in accordance with § 47a-1 (d), and, under § 47a-21 (a) (6) (B), they were also "successors to . . . a landlord's interest . . . ." The Riveros, as sublessors, were the plaintiffs' landlords by virtue of § 47a-21 (a) (6) (C). When the plaintiffs paid a security deposit to the Riveros, however, to replace the security deposit that the Riveros had paid to the defendants, the defendants became successors to the Riveros' interest in the plaintiffs' security deposit. The Riveros' inter-

est as holders of the second security deposit was transferred to the defendants. Nancy Rivero testified that the defendants understood that the security deposit in their hands belonged to the plaintiffs. Therefore, for purposes of § 47a-21 (d) (2), the defendants are the plaintiffs' landlords with respect to the plaintiffs' security deposit. Further, the plaintiffs fit under the statutory definitions as tenants. They are the persons entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others.

Section 47a-21 (d) (2) imposes liability on a landlord who does not deliver a security deposit to the former tenants. A landlord may deduct from the deposit the amount of any damage caused by the tenant in breach of his rental agreement, but must submit an itemized account of such damages to the former tenant. The referee found that the defendants, as the plaintiffs' landlords, delivered to the plaintiffs neither their security deposit nor an itemized account of damage to the premises. That finding is not clearly erroneous, and liability under § 47a-21 (d) (2) is proper.

## II

### THE DEFENDANTS' LIABILITY UNDER CUTPA

The referee also found that the defendants were liable to the plaintiffs under CUTPA for having engaged in unfair trade practices. General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The defendants raise the following two claims concerning the court's award under CUTPA: (1) none of the facts found by the referee supports the referee's conclusion that they violated CUTPA;[1] and (2) the award was not sup-

---

[1] In support of their claim, the defendants in their brief state merely that "[t]he referee's report is utterly devoid of any finding of any specific facts which would support a conclusion of any CUTPA violation on the part of any of the defendants." The defendants did not provide any further analysis in support of that argument.

ported by the evidence because the plaintiffs were not tenants of the defendants.[2] We disagree.

Our Supreme Court has determined that CUTPA is applicable to residential landlord-tenant transactions. See *Conaway* v. *Prestia*, 191 Conn. 484, 464 A.2d 847 (1983). General Statutes § 42-110b (d) also provides: "It is the intention of the legislature that this chapter be remedial and be so construed." Also, our Supreme Court has held "that CUTPA is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted). *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 637, 698 A.2d 258 (1997).

The referee found that because the defendants had violated § 47a-21 (d) (2) by not delivering the plaintiffs' security deposit to them, the defendants had committed a CUTPA violation. The legislature and courts mandate a liberal reading of CUTPA. The referee's finding is not clearly erroneous and will not be disturbed.

## III

### THE DEFENDANTS' LIABILITY FOR UNJUST ENRICHMENT

The referee found that the defendants' wrongful retention of the plaintiffs' security deposit amounted

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Wittman* v. *Krafick*, 67 Conn. App. 415, 416, 787 A.2d 559 (2001), cert. denied, 260 Conn. 916, 797 A.2d 516 (2002). Pursuant to *Wittman*, we deem the defendants' claim abandoned and unreviewable.

[2] We previously concluded in part I that the defendants were landlords as to the plaintiffs for purposes of § 47a-21 (d) (2) because, pursuant to

to unjust enrichment. The defendants claim that they were not unjustly enriched and that this finding was improper because there was no evidence of a $3700 payment from the plaintiffs. The referee's findings are in opposition to the defendants' claim.

The plaintiffs concede that they never gave the defendants $3700 as a security deposit. During negotiations for the sublease between the plaintiffs and the Riveros, the defendants became unwilling to accept the plaintiffs' credit. Because of that, the defendants refused to return the $3700 security deposit that had been given to them by the Riveros. To remedy that situation, the plaintiffs paid that same amount to the Riveros, and Nancy Rivero testified that the defendants understood that the deposit in their hands then belonged to the plaintiffs. That was sufficient evidence for the referee to find that the $3700 deposit in the hands of the defendants properly belonged to the plaintiffs at the termination of their tenancy.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered . . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery

§§ 47a-1 and 47a-21 (a) (6) (B), the defendants were owners of the premises and successors to the Riveros' interest in the plaintiffs' security deposit.

for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994).

The referee found that the defendants were benefited by retaining the deposit, that it was unjust of them to fail to return the deposit to the plaintiffs and that the plaintiffs had sustained a detriment in the amount of $3700. The defendants retained money that rightfully belonged to the plaintiffs. That act was inequitable, and the defendants were unjustly enriched. The referee's finding that the defendants were unjustly enriched therefore is not clearly erroneous.

IV

THE PLAINTIFFS' DAMAGES

The referee found that the plaintiffs should be awarded $3700 for the failure to return of the security deposit, an additional $3700 for the wrongful detention of the deposit under § 47a-21 (d) (2), $1411 in interest under § 37-3a and $1321 in attorney's fees under CUTPA. The defendants claim that amount is improper. We disagree.

Under § 47a-21 (d) (2), a landlord who wrongfully does not return a tenant's security deposit is "liable for twice the amount or value of any security deposit paid by such tenant . . . ." Under that provision, "[t]he court, therefore, need only determine two factual questions to award twice the value of the security deposit under the statute: (1) Was the security deposit returned with interest, or a written notification of damages delivered, within thirty days of the tenant's termination; and (2) if a written notification of damages was delivered,

was the balance of the security deposit and a statement of damages delivered within sixty days of the termination?" *Kufferman* v. *Fairfield University*, 5 Conn. App. 118, 122, 497 A.2d 77 (1985). Because the defendants neither returned the plaintiffs' security deposit nor provided the plaintiffs with written notification of damage to the premises, an award of twice the value of the security deposit ($7400) was proper.

The referee awarded $1411 in interest to the plaintiffs under § 37-3a. That section provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." General Statutes § 37-3a. Further, this court has reiterated our Supreme Court's "well established propositions that § 37-3a provides for interest on money detained after it becomes due and payable, that the question under that statute is whether the money was wrongfully withheld, and that the ultimate determination is one to be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . It is equally well established that we will not overrule the trial court's award of interest absent a clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 136, 665 A.2d 86, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

The security deposit was wrongfully detained after it became due and payable. Therefore, it was within the discretion of the referee to determine the amount of interest. We find no abuse of that discretion in the award of interest under § 37-3a.

The referee also awarded $1321 in attorney's fees for the defendants' violation of CUTPA. General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may

award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." The referee found a CUTPA violation, and we have affirmed the court's acceptance of that finding. The standard of review for determining whether an authorized award of attorney's fees is unreasonable pursuant to § 42-110g (d) is whether the amount of the award represents an abuse of discretion by the court. *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 795, 720 A.2d 242 (1998). Under the facts of this case, we find no such abuse.

The judgment is affirmed.

In this opinion the other judges concurred.